IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| DEVELOPERS SURETY AND INDEMNITY COMPANY,<br><br>    Plaintiff,<br><br><br><br>    vs.<br><br><br>PACIFIC WEST, LLC, JAY HARWOOD, and S. VAL STAKER<br><br><br>    Defendants. | **ORDER and**<br>**MEMORANDUM DECISION**<br><br><br><br><br>Case No. 2:10-cv-188-CW |

In this action, Plaintiff Developers Surety and Indemnity Company ("Developers") asserts

two claims.  First, Developers seeks declaratory relief that Defendant Pacific West, LLC

("Pacific West") may not recover against certain bonds the parties have referred to as the "DPG

Bonds."  Second, Developers claims that Pacific West and its principals Jay Harwood and S. Val

Staker (together, the "Defendants") are required to indemnify it under an indemnity agreement

for expenses incurred in connection with the DPG Bonds.

Now before the court are cross motions for summary judgment by the parties on

Developer's second cause of action for indemnity.[1]  (Dkt. Nos. 11 & 19).  Also before the court

is a motion to intervene by Harper-Kilgore LLC f/k/a Kilgore Pavement Maintenance, LLC

---

[1] At this point, the court is satisfied that it has subject matter jurisdiction over this case, particularly in light of Plaintiff's amended complaint clarifying the basis for diversity jurisdiction.

("Harper-Kilgore") (Dkt. No. 26).[2] Harper-Kilgore was a subcontractor to Pacific West on the same project and also as made a claim against the DPG Bonds. For the reasons set forth below, the cross motions are DENIED and the motion to intervene is GRANTED.

## BACKGROUND

Pacific West is a construction company performing primarily paving and asphalt work. In early 2007, Mr. Harwood contacted Jace Pearson, an agent of Developers, to request performance and payment bonds for Pacific West construction projects. Mr. Pearson responded that Developers would issue the bonds on several conditions, including that Pacific West, Mr. Harwood, and Mr. Staker would enter into a general indemnity agreement in favor of Developers. On May 15, 2007, Pacific West, as principal, executed a General Indemnity Agreement (the "Pacific West Indemnity") in favor of Developers. Mr. Harwood and Mr. Staker signed the Pacific West Indemnity as indemnitors. Thereafter, Developers issued a number of construction bonds on various construction projects at the request of Pacific West. Whether the DPG Bonds, which are at issue in this litigation, were covered by the Pacific West Indemnity is a key issue in this action. It is undisputed, however, that Developers issued bonds pursuant to the Pacific West Indemnity which are unrelated to the construction project at issue in present action.

In 2008, nearly a year after Pacific West executed the Pacific West Indemnity, NWB Technology, LLC (NWB), a minority owned construction company, was awarded various contracts to perform work for the United States government at the Dugway Proving Grounds military base under Section 8(a) of the Small Business Administration Act (the "Dugway

---

[2] Because the court has determined that oral argument would not be helpful in resolving this motion, a hearing on this motion will not be held. *See* DUCivR 7-1(f).

Project"). NWB had discussions with Pacific West about its possible participation in the Dugway Project and in April 2009, Pacific West entered into an arrangement with NWB in which Pacific West agreed to provide NWB the means to perform the work required by the Dugway Project contract.

Under the federal Miller Act, a contractor performing work on a federal project must bond performance and payment. Nevertheless, NWB commenced work on one part of the Dugway Project before it had obtained the required bonds. Soon after NWB started work, the federal government informed NWB that it was required to obtain bonds. NWB, however, did not have sufficient assets or bonding credit to obtain the bonds. To address this failure, Pacific West agreed to provide Miller Act bonding for the Dugway Project.

In approximately April 2009, Pacific West again contacted Jace Pearson of Developers to request bonds for the Dugway Project. In response, Developers issued a bond for one of the several contracts making up the Dugway Project, naming Pacific West as the bond principal and NWB and the federal government as co-obligees. The government rejected the bond, instructing that NWB was the contractor named on the project and must be named as the principal on the bond. Soon after, Pacific West communicated this information to Mr. Pearson and apparently requested that new bonds be issued naming NWB as principal and the government as the sole bond obligee.

In response, Mr. Pearson caused Developers to issue several bonds covering contracts for the Dugway Project. The newly issued bonds, dated May 27, 2009, June 12, 2009 and June 23, 2009, named NWB as the principal and are the DPG Bonds at issue in this litigation. It is undisputed that Pacific West paid the premium for them. Developers did not require, however,

that NWB execute a general indemnity agreement before it issued the bonds.

NWB and Pacific West proceeded to perform the work required by the Dugway Project contracts. Pacific West argues that it completed its portion of the work as a subcontractor to NWB. Developers challenges that assertion, arguing that NWB and Pacific West were in fact partners or joint venturers. As support for its argument, Developers offers that NWB and Pacific West had prepared a draft "teaming" agreement, setting forth each of their responsibilities. The teaming agreement, however, was never executed. Developers also relies upon notes taken at meetings between NWB and Pacific West reflecting at least discussion about how they would share the profits to be earned on the Dugway Project. There is no evidence that NWB and Pacific West ever shared the profits as indicated in the notes. As additional support, Developers also argues that NWB and Pacific West opened a joint bank account in which the payments for the completed work were to be deposited which required all checks be signed by both NWB and Pacific West. The payments in fact, however, were deposited in NWB's general operating account. There is no contention that Pacific West had control over the funds in NWB's general operating account.

About two months after the last of the DPG Bonds was issued, Pacific West requested Mr. Peterson to issue additional bonds naming NWB as the principal for a project unrelated to the Dugway Project. Before he caused Developers to issue these non-Dugway Project bonds to NWB, Mr. Pearson delivered a general indemnity agreement (the "NWB Indemnity") to Pacific West, requesting that Pacific West arrange for NWB to sign it. NWB executed the NWB Indemnity in August 2009, but the contract was "back dated" to reflect an effective date of May 27, 2009, a date corresponding to the date the first of the DPG Bonds was issued. Once NWB

had signed the NWB Indemnity, Mr. Pearson caused Developers to issue the bonds naming NWB as principal on the projects unrelated to the Dugway Project.

Developers asserts that it is customary for Developers to obtain general indemnity agreements from the entities for which it issues bonds and that Mr. Pearson was motivated to require the NWB Indemnity in August 2009 because there was a small difference in the amount covered by the subcontractor bonds Developers issued with Pacific West a principal and the DPG Bond issued to NWB as principal. Developers argues based upon Mr. Pearson's sworn testimony that it relied only upon the Pacific West Indemnity to issue the DPG Bonds and that the NWB Indemnity was required only because of the Non-Dugway Project contracts. In contrast, Mr. Harwood offers sworn testimony that when he spoke to Mr. Pearson about having NWB sign a general indemnity agreement, Mr. Pearson said that he "'needed to get this done' for the DPG Bonds." (Harwood Aff., Dkt. No. 12-12, at ¶ 10.)

Once the work required by the contracts making up the Dugway Project was completed, NWB failed to pay Pacific West, which then was unable to pay its subcontractor, Harper-Kilgore. To recover payment for the portion of the work they had completed, both Pacific West and Harper Kilgore have made claims against the DPG Bonds. Developers has refused to pay on those claims.

Defendants move for partial summary judgment on Developers' claim for indemnification. Defendants argue that they have no obligation to indemnify Developers for claims on the DPG Bonds because the Pacific West Indemnity excludes bonds "which is/are specifically within the scope of an other indemnity agreement." (Pacific West Indemnity, Dkt. No. 1-1, at p.1.) Defendants contend that the DPG Bonds are specifically covered by the NWB

Indemnity and thus expressly excluded from the Pacific West Indemnity.[3]

Developers responds with a cross motion for summary judgment on the indemnity claim, asserting that the DPG Bonds are within the scope of the Pacific West Indemnity. Developers maintains that it issued the DPG Bonds pursuant to and in reliance on the Pacific West Indemnity. Developers argues that it has no obligation under the DPG Bonds to honor the claims made by Pacific West and that indeed Defendants must indemnify Developers for expenses related to Developers' actions in denying Pacific West payment under the DPG Bonds.

## ANALYSIS

## I.    Cross Motions for Summary Judgment

A court cannot grant summary judgment if there is a dispute of material fact. *See* Fed.R.Civ.P. 56(a). In this case, there is conflicting evidence creating a dispute of material facts precluding the court from ruling in favor of either side. In short, there is a dispute over whether the DPG Bonds are covered by the Pacific West Indemnity or the NWB Indemnity.

Nothing on the face of those two documents definitively resolves the question of whether the DPG Bonds were to be "specifically within the scope" of the NWB Indemnity, covered only by the Pacific West Indemnity, or covered by both indemnity agreements. Both indemnity agreements are form documents, apparently executed without negotiation of the specific language. Because of the dates of the events at issue, the evidence is conflicting as to whether the Pacific West Indemnity was signed with the understanding by Defendants that it would cover

---

[3] Defendants also argue that even if the DPG Bonds are covered by the Pacific West Indemnity, that contract should not be read to indemnify Developers against claims that Pacific West made against the DPG Bonds. The court does not believe that this reading is compelled as a matter of law by the Pacific West Indemnity.

a number of different construction projects. Crucially, it is not clear that when the DPG Bonds were issued, Defendants intended that those bonds would be necessarily covered by the Pacific West Indemnity. Moreover, the evidence is in conflict as to whether the parties intended that the NWB Indemnity would encompass the DPG Bonds and remove them from the scope of the Pacific West Indemnity.

The DPG Bonds on their face do not state that they were issued under either of the indemnity agreements at issue. Likewise, neither of the indemnity agreements state expressly that the DPG Bonds are within their scope. The documents thus give rise to a patent ambiguity. The court must therefore look to extrinsic evidence determine the intent of the parties. *See Merrick Young Inc. v. Wal-Mart Real Estate Business Trust,* 257 P.3d 1031, 1036-7 (Utah App. Ct. 2011) ("If, however, the court determines that the language [of a contract] is ambiguous, the parties' intent is a question of fact and extrinsic evidence regarding their intentions may be considered.") (citation omitted).[4]

The facts on the record also do not resolve this question. Most importantly, there is a dispute as to whether Mr. Pearson and Defendants intended that when the NWB Indemnity was executed, it would replace the Pacific West Indemnity. If so, a fact finder could conclude that NWB had assumed all obligations created by the DPG Bonds, even if those bonds had been covered had under the earlier agreement.

Several facts exemplify the disputed issue. The DPG Bonds were issued on the Dugway Project, for which NWB was the "principal." When NWB and Pacific West submitted a bond

---

[4] The parties have agreed that, for purposes of this motion, Utah law should apply to construe the terms of the relevant contracts.

listing Pacific West as principal, the government rejected the bond and required a bond naming NWB as the principal and remove Pacific West as a principal. This fact was known to at least to Mr. Pearson, Developers' agent, and the DPG Bonds were issued to address that very problem. Defendants may well have reasonably understood that because Pacific West was removed as a principal, they were excused from any indemnity obligation. While Mr. Pearson professes that he never told any representative of Defendants that he was issuing the NWB Indemnity to cover the DPG Bonds, the Defendants have a witness, Mr. Harwood, who says otherwise.[5]

The court simply cannot resolve these questions on summary judgment, since it would require the court to weigh evidence and not simply look to undisputed facts. Accordingly, the court must deny the cross motions for judgment on this issue.

## II. Motion to Intervene

Harper-Kilgore moves to intervene either of right or permissively. Under Rule 24(b) of the Federal Rules of Civil Procedure, the court may permissively grant Harper-Kilgore's motion if Harper-Kilgore's claim shares "a common question of law or fact" with a "claim or defense" in

---

[5] The issue of whether Defendants owe Developers indemnity will be resolved by deciding whether the Pacific West Indemnity covers the DPG Bonds. This question is a separate issue from the question of whether Pacific West (and Harper-Kilgore) should be paid under the DPG Bonds, which is the question raised by Developers' first cause of action. Though the parties do not move for summary judgment on this claim, the court will briefly address this issue. Developers argues that Pacific West is precluded from claiming under the DPG Bonds because it was a joint venturer with NWB on the Dugway Project. On this record, the nature of the relationship between Pacific West and NWB remains unresolved. While there was a draft teaming agreement, that agreement is not dispositive of the relationship because the parties did not abide by all of its terms. For example, the parties did not proceed with contract payments being deposited into the joint account. If Pacific West in fact acted as a subcontractor to NWB, Pacific West may have claims against the DPG Bonds. On the other hand, if Pacific West in fact functioned as joint venturer, Developers' argument may be well taken.

the main action.  Fed. R. Civ. P. 24(b)(1)(B).  The court has discretion deciding such a motion, but nonetheless "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  *Id.  See also Kane County Utah v. United States*, 597 F.3d 1129, 1135 (10th Cir. 2010).

Here, Harper-Kilgore has made a claim on the DPG Bonds for work it alleges that it performed on the Dugway Project.  Developers has denied that claim on the ground that Harper-Kilgore was a subcontractor to Pacific West, making it a "sub-subcontractor" to the prime contractor, NWB.  Developers argues that Harper-Kilgore failed to provide the required notice to NWB, as the prime contractor, of its claim.  Harper-Kilgore argues that Developers should not be permitted to argue both that Pacific West is a subcontractor to NWB, a necessary assertion to deny Harper-Kilgore's claim, while at the same time arguing that Pacific West is really the prime contractor, an argument it makes to defeat Pacific West's claim on the DPG Bonds.  These issues present a common issue of fact that should and can best be decided in the same action.

Moreover, the court finds that Harper-Kilgore's intervention will not unduly prejudice Developers or unduly delay this action.  Harper-Kilgore's claims do not appear to significantly alter the scope of the discovery involved or materially impact the scope of the substantive issues involved.

Because the court has concluded that Haper-Kilgore may intervene under Rule 24(b), there is no need to extensively address whether it also could have do so of right under Rule 24(a).  The court, however, briefly notes that it does appear that Harper-Kilgore does meet all the criteria to be allowed the right to intervene.

## CONCLUSION AND ORDER

For the reasons stated above, the court ORDERS as follows:

Defendants' motion for partial summary judgment (Dkt. No. 11) is DENIED;

Developers' motion for partial summary judgment (Dkt. No. 19) is DENIED; and

Harper-Kilgore's motion to intervene (Dkt. No. 26) is GRANTED.

SO ORDERED this 29th day of September, 2011.

BY THE COURT:

_____

Clark Waddoups
United States District Judge